UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 12-28-HRW

JOHN DAVID KENNARD, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

CITY OF ASHLAND, KENTUCKY
and BOYD COUNTY, KENTUCKY, DEFENDANTS.

This matter is before the Court upon the parties' Motions for Summary Judgment [Docket Nos. 14, 15 and 18]. For the reasons set forth herein, the Court finds that the Defendants are entitled to judgment as a matter of law.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from Plaintiff's eviction from his home located at 5238 Skyline Drive, Ashland, Boyd County, Kentucky 41101, as a result of violations so severe and extensive that the City of Ashland, Kentucky (hereafter "the City") condemned the structure on said property as it was determined to be unfit and unsafe for human occupancy or use.

By letter dated June 21, 2011, Scott Niece, the City's Property Maintenance Manager, notified the Plaintiff that an inspection of his property made that morning resulted in a finding that his property was in violation of Sections 108.1.3, 502.1, 605.1, and 602.3 of the City's Property Maintenance Ordinance No. 106, 2009 series, because the dwelling lacked connected and working utilities. [Docket No. 15-1]. The letter further advised Plaintiff that he was required to reconnect all his utilities and the same was to be visibly verified by the inspector no later than 1:00 P.M. on June 22, 2011, or the property would be condemned as uninhabitable, all

persons vacated therefrom, and the structure secured by the City until all applicable code violations were corrected.

Thereafter, the Plaintiff appeared in the City's office of the Property Maintenance Manager requesting more time to comply with the notice of violation. However, he was denied the extension. The Plaintiff then contacted Mike Miller, the City's Director of Planning and Community Development, to inquire as to the legality of the City's condemnation of his property as a result of his residence not having electricity and running water. Mr. Miller told the Plaintiff he would further research the Plaintiff's request and contact him with a ruling. By letter dated July 8, 2011, Mr. Miller informed the Plaintiff that he had in fact talked with the City's legal counsel regarding the Plaintiff's inquiry and relayed the following information to the Plaintiff:

> The lack of utilities is considered a life safety violation and [the City] cannot allow it to continue. You have until July 22 to restore water and electric service to the home or we will have to condemn the property until such service is restored. If you disagree with the ruling you may seek relief in the Boyd County court system.

[Docket No. 15-4]. This letter also advised Plaintiff that his time to comply with the notice of violation had been extended to July 22, 2011.

On July 25, 2011, Scott Niece sent Plaintiff a "Friendly Reminder" that he was required to restore all utility services by 4:00 P.M. that day or the house would be condemned as stated in the previous notices. [Docket No. 15-5]. Upon inspection that same day at 4:10 P.M., which was three days past the already-extended compliance date, the City determined the Plaintiff had failed to comply with the order to restore all the utilities at the house and condemned the same. The next day, an "Order to Repair or Demolish" for lack of utilities was sent to Plaintiff by Scott Niece. [Docket No. 15-6]. This Order reiterated that the Plaintiff's home was in violation of Sections 108.1.3, 502.1, 605.1, and 602.3 of the City's Property Maintenance Ordinance No. 106, as stated in the City's prior

notices.

Several months after the Plaintiff's house was condemned, one of the City's Property Inspectors, Corie Kazee, found that the Plaintiff and his eight house cats were still living in the dwelling. [Docket No. 15-7]. Mr. Kazee explained to the Plaintiff that he was unable to stay in the dwelling and that he needed to leave and take his house cats with him. Mr. Kazee also explained to the Plaintiff that it was against the City's policies and regulations to allow animals to stay in an uninhabitable dwelling. *Id*. After the Plaintiff declined to remove his house cats from the dwelling, Mr. Kazee contacted the City's Animal Control Officers, Greg Woods and Dave Branham, to remove the house cats from the condemned property. *Id*. The house cats were immediately taken to the Boyd County Animal Shelter. *Id*.

After waiting for ten days, three days in excess of the seven day period required by Ordinance No. 151, the cats were euthanized. [Docket No. 18-2]. During this period, the supervisor of the shelter, Paul Helton, contacted Plaintiff on four separate occasions and told him he could pick up his cats but would be required to pay a reclaiming fee. [Affidavit of Paul Helton, Docket No. 18-3]. Plaintiff did not appear to reclaim his cats.

Plaintiff filed this civil action against the City and the County. alleging that his right to be secure in his home and property and his right to substantive due process guaranteed by the Fourth and Fifth Amendments had been violated and that he had been deprived of his longtime companionship with his eight house cats. Although the Complaint does not specify which Defendant committed the violations, the Court will assume that the allegations are against both the City and the County.

Plaintiff and both Defendants seek summary judgment.

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56©, the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

### III. ANALYSIS

The Court will first address Plaintiff's dispositive motion, which is a recitation if unsubstantiated statements with no accompanying affidavits or other proof. As such, it is not a proper dispositive motion and will be denied.

As for Defendants' motions, if for no other reason, it would be entirely proper to grant them based on Plaintiff's failure to respond thereto as required by Rule 7.1(c)(1) of the Joint Local Rules of the Eastern and Western Districts of Kentucky[1]. The Court has reviewed the Defendants' motions and the court record, nevertheless. Based on the current state of the record, it appears that the Defendants' motions should be sustained on its merits as well.

Pursuant to Section 1983 of Chapter 42 of the United States Code, Plaintiff must demonstrate the conduct complained of in his Complaint was committed by a person or entity acting under color of state law and such conduct deprived plaintiff of rights, privileges, or immunities secured by the laws of the United States. The Court is mindful, however, that the scope of federal court review with regard to substantive due process attack on state administrative action is limited. *See generally, Stevens v. Hunt*, 646 F.2d 1168 (6th Cir. 1981). Plaintiff bears the burden of establishing that the state agency is guilty of "'arbitrary and capricious action. In other words, "that there is no rational basis for" the administrative decision." *Id.* At 1170. The Court is also mindful that a city has broad discretion in the enactment of laws to preserve and promote the health, morals, security and general welfare of its citizens." *City of Louisville, et al., v. Thompson*, 339 S.W.2d 869, 872 (Ky. App. Ct., 1990).

---

[1] Local Rule 7(c)(1) specifically states that "[f]ailure to file an opposing memorandum may be grounds for granting [a] motion."

In this case, the City adopted the International Property Maintenance Code (IPMC), which is a model code that regulates the minimum maintenance requirements for existing buildings. This Ordinance establishes minimum maintenance standards for basic equipment, light, ventilation, heating, sanitation, and fire safety and provides for the regulation and safe use of existing structures in the interest of the social and economic welfare of the community. The City's Property Maintenance Inspector determined, on several occasions, that the Plaintiff's dwelling did not meet even these minimum maintenance standards. The Plaintiff's home lacked running water, a sewer connection, electricity, and heating. The home was covered in filth and contamination and in an utter state of disrepair, as evidenced by those pictures taken by the City as part of its inspection.

Notably, in his Complaint, Plaintiff admits that he did not have the required utilities connected at his home. It appears his only argument is that the City cannot force him to connect utilities. However, it is clear from the City's Property Maintenance Ordinance that the City has not only a right, but an obligation to ensure compliance therewith as part of its police powers.

In light of the authorities cited above, the Court finds that the City properly adopted minimum maintenance requirements for existing structures in order to promote the health, morals, security and general welfare of its citizens. Further, the City's actions resulting in expense or loss of the Plaintiff's property does not amount to a taking without due process of law because it was necessary to protect the public.

The same analysis applies to the County. It established ceratin procedures to ensure public safety. It adhered to those procedures. Indeed, based upon the affidavit of Mr. Helton, Plaintiff was given excess time and sufficient notice to reclaim his cats. He did not.

### IV. CONCLUSION

The Court having reviewed the motions and the record in this matter, finds that no genuine issues of material fact exist and that the City of Ashland, Kentucky and Boyd County, Kentucky are entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion for Summary Judgment [Docket No. 14] be **OVERRULED**;

(2) Defendant City of Ashland's Motion for Summary Judgment [Docket No. 15] be **SUSTAINED**;

(3) Defendant Boyd County, Kentucky's Motion for Summary Judgment [Docket No. 18] be **SUSTAINED**; and

(4) Plaintiff's claims against it are hereby **DISMISSED WITH PREJUDICE**.

This 22nd day of February, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge