Eastern District of Kentucky
FILED
FEB 10 2014
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 12-28-HRW

JOHN DAVID KENNARD,

PLAINTIFF,

v.  **MEMORANDUM OPINION AND ORDER**

CITY OF ASHLAND, KENTUCKY
and BOYD COUNTY, KENTUCKY, DEFENDANTS.

This matter is before the Court upon the parties' Motions for Summary Judgment [Docket Nos. 25 and 26].

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Plaintiff's eviction from his home located at 5238 Skyline Drive, Ashland, Boyd County, Kentucky 41101, as a result of violations so severe and extensive that the City of Ashland, Kentucky (hereafter "the City") condemned the structure on said property as it was determined to be unfit and unsafe for human occupancy or use. It is before this Court on remand from the United States Court of Appeals of the Sixth Circuit for consideration of a claim for lack of procedural due process.

By letter dated June 21, 2011, Scott Niece, the City's Property Maintenance Manager, notified the Plaintiff that an inspection of his property made that morning resulted in a finding that his property was in violation of Sections 108.1.3, 502.1, 605.1, and 602.3 of the City's Property Maintenance Ordinance No. 106, 2009 series, because the dwelling lacked connected and working utilities. [Docket No. 15-2]. The letter further advised Plaintiff that he was

required to reconnect all his utilities and the same was to be visibly verified by the inspector no later than 1:00 P.M. on June 22, 2011, or the property would be condemned as uninhabitable, all persons vacated therefrom, and the structure secured by the City until all applicable code violations were corrected.

Thereafter, the Plaintiff appeared in the City's office of the Property Maintenance Manager requesting more time to comply with the notice of violation. However, he was denied the extension. The Plaintiff then contacted Mike Miller, the City's Director of Planning and Community Development, to inquire as to the legality of the City's condemnation of his property as a result of his residence not having electricity and running water. Mr. Miller told the Plaintiff he would further research the Plaintiff's request and contact him with a ruling.

By letter dated July 8, 2011, Mr. Miller informed the Plaintiff that he had in fact talked with the City's legal counsel regarding the Plaintiff's inquiry and relayed the following information to the Plaintiff:

> The lack of utilities is considered a life safety violation and [the City] cannot allow it to continue. You have until July 22 to restore water and electric service to the home or we will have to condemn the property until such service is restored. **If you disagree with the ruling you may seek relief in the Boyd County court system.**

[Docket No. 15-4](emphasis added).

This letter also advised Plaintiff that his time to comply with the notice of violation had been extended to July 22, 2011.

The Plaintiff never restored water and electric service to the home nor did he indicate that he disagreed with the ruling.

2

On July 25, 2011, Scott Niece sent Plaintiff a "Friendly Reminder" that he was required to restore all utility services by 4:00 P.M. that day or the house would be condemned as stated in the previous notices. [Docket No. 15-5]. This notice also provided "[i]f you have any questions or need clarification of this door hanger, you may reach me at (606) 327-2030. *Id.* There is no indication in the record that Plaintiff called Mr. Niece.

Upon inspection that same day at 4:10 P.M., which was three days past the already-extended compliance date, the City determined the Plaintiff had failed to comply with the order to restore all the utilities at the house and condemned the same.

The next day, an "Order to Repair or Demolish" for lack of utilities was sent to Plaintiff by Scott Niece. [Docket No. 15-6]. This Order reiterated that the Plaintiff's home was in violation of Sections 108.1.3, 502.1, 605.1, and 602.3 of the City's Property Maintenance Ordinance No. 106, as stated in the City's prior notices. The notice also provided, in bold, "[i]f **you have not contacted our Legal Department within 30 days of receipt of this Order, the structure listed above will be demolished.**" *Id.* (emphasis in original).

Plaintiff again failed to contact the City of Ashland Legal Department within thirty days to indicate any objection to the threatened demolition of his property. Ultimately, the house was razed after thirty days had passed without objection.

Several months after the Plaintiff's house was condemned, one of the City's Property Inspectors, Corie Kazee, found that the Plaintiff and his eight house cats were still living in the dwelling. [Docket No. 15-7]. Mr. Kazee explained to the Plaintiff that he was unable to stay

3

in the dwelling and that he needed to leave and take his house cats with him. Mr. Kazee also explained to the Plaintiff that it was against the City's policies and regulations to allow animals to stay in an uninhabitable dwelling. *Id.* After the Plaintiff declined to remove his house cats from the dwelling, Mr. Kazee contacted the City's Animal Control Officers, Greg Woods and Dave Branham, to remove the house cats from the condemned property. *Id.* The house cats were immediately taken to the Boyd County Animal Shelter. *Id.*

After waiting for ten days, three days in excess of the seven day period required by Ordinance No. 151, the cats were euthanized. [Docket No. 18-2]. During this period, the supervisor of the shelter, Paul Helton, contacted Plaintiff on four separate occasions and told him he could pick up his cats but would be required to pay a reclaiming fee. [Affidavit of Paul Helton, Docket No. 18-3]. Plaintiff did not appear to reclaim his cats.

Plaintiff filed this civil action against the City and the County alleging that his right to be secure in his home and property and his right to substantive due process guaranteed by the Fourth and Fifth Amendments had been violated and that he had been deprived of his longtime companionship with his eight house cats.

This Court granted summary judgment in favor of the Defendants on these claims. The United States Court of Appeals for the Sixth Circuit affirmed this ruling, holding that the City's condemnation of the Plaintiff's property was not arbitrary and capricious but was related to the City's interest in protecting the health and welfare of its citizens and, as such, Plaintiff's substantive due process rights were not violated. However, on review, the Sixth Circuit also identified a procedural due process claim implicit in the Plaintiff's allegations as "he appears to challenge the procedures taken in connection with the deprivation of his property – that is, the

failure to provide him with a trial prior to that deprivation – which is the essence of a procedural due process claim." [Docket No. 23].

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. A non-moving party\ cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

## III. ANALYSIS

The only issue properly before this Court is Plaintiff's implied procedural due process claim. In order to maintain such a claim, "a plaintiff must establish a life, liberty, or property interest protected by the Due Process Clause; that he was deprived of this protected interest within the meaning of the Due Process Clause; and that the state did not afford him adequate procedural rights prior to depriving her of her protected interest". *Reid Machinery, Inc. v. Lanzer*, 614 F.Supp.2d 849, 865 (N.D.Ohio 2009). "Due process rights are created and their dimensions

defined from state law, rules, or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* In determining the adequacy of the process, one must look to the Constitution. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. " *Id.*

In this case, it is the City's Property and Maintenance Code which is at issue. It makes it unlawful for a person to be in violation of any of the provisions of the International Property Maintenance Code, 2009 edition ("IPMC"), adopted thereby. Section 107.1 of the IPMC requires notice be given to the person responsible for any violations of the code. That notice must (1) be in writing, (2) include a description of the real estate sufficient for identification, (3) include a statement of the violations and why the notice is being issued, (4) include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of the IPMC, (5) inform the property owner of the right to appeal, and (6) include a statement of the right to file a lien in accordance with IPMC Section 106.3. Such notice can be delivered the following ways: (1) personal delivery, (2) delivery by certified or first-class mail addressed to the last known address, or (3) if the notice is returned showing that the letter was not delivered, a copy thereof must be posted in a conspicuous place in or about the structure affected by the notice.

Section 111 of the IPMC sets-out a specific process for appealing a notice or order issued under the code. To initiate the appeal process, a person directly affected by a notice or order issued under the code must file a written application for appeal within twenty (20) days after the notice or order was served. Thereafter, a board of appeals must meet within twenty (20) days of the filing of an appeal or at a stated periodic meeting. If the appellant is not satisfied with the

board's decision after a hearing, then he has the right to apply to the appropriate court for a writ of certiorari to correct any errors of law.

The Ordinances provide a meaningful means to assess violations and ample opportunity to be heard in that regard. The ordinance, as written, does not violate the procedural due process rights of Plaintiff.

With regard to the Ordinances as applied to Plaintiff, it cannot be disputed that Plaintiff was given written notice of the claimed violation of the City Ordinance which justified condemnation of the premises and was given notice of a date certain by which repair must be made or that adverse action would be taken. The City provided the Plaintiff with three (3) written notices specifying his violations of the Ordinance and advising him that condemnation and/or razing of his property would take place after certain dates unless he corrected the violation or took further action.

Despite notice of the need for action to be taken and the existence of an appeal process, the Plaintiff chose to take no action on his own behalf. At no time throughout the condemnation process, nor up to the point of filing this lawsuit, did the Plaintiff inquire into or request a hearing, formal or informal, or seek any other type of redress from the City pertaining to the condemnation of his home. At no time did the Plaintiff invoke the appeals process provided for by Section 111 of the IPMC. Only after having failed to avail himself of the process provided, Plaintiff instituted this lawsuit. It strains credibility for Plaintiff to ignore the procedures to which he was entitled and then to challenge the sufficiency of those very procedures.

Based upon the foregoing, this Court finds no violation of procedural due process at the

hands of the Defendants.

## IV. CONCLUSION

The Court having reviewed the motions and the record in this matter, finds that no genuine issues of material fact exist and that the City of Ashland, Kentucky and Boyd County, Kentucky are entitled to judgment as a matter of law. Accordingly, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion for Summary Judgment [Docket No. 26] be **OVERRULED**;

(2) Defendant City of Ashland's Motion for Summary Judgment [Docket No. 25] be **SUSTAINED**;

(3) Plaintiff's claim herein is hereby **DISMISSED WITH PREJUDICE**.

This 10th day of February, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge