UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 12-28-HRW

JOHN DAVID KENNARD,

PLAINTIFF,

v.          **MEMORANDUM OPINION AND ORDER**

CITY OF ASHLAND, KENTUCKY, *et al.*,          DEFENDANTS.

This matter is before the Court upon the Defendant City of Ashland's Renewed Motion for Summary Judgment [Docket No. 36].

**I.**

This case arises from Plaintiff's eviction from his home located at 5238 Skyline Drive, Ashland, Boyd County, Kentucky 41101, as a result of violations so severe and extensive that the City of Ashland, Kentucky (hereafter "the City") condemned the structure on said property as it was determined to be unfit and unsafe for human occupancy or use. It is before this Court on remand from the United States Court of Appeals of the Sixth Circuit for consideration of a claim for lack of procedural due process.

By letter dated June 21, 2011, Scott Niece, the City's Property Maintenance Manager, notified the Plaintiff that an inspection of his property made that morning resulted in a finding that his property was in violation of Sections 108.1.3, 502.1, 605.1, and 602.3 of the City's Property Maintenance Ordinance No. 106, 2009 series, because the dwelling lacked connected and working utilities. [Docket No. 15-2]. The letter further advised Plaintiff that he was required to reconnect all his utilities and the same was to be visibly verified by the inspector no

later than 1:00 P.M. on June 22, 2011, or the property would be condemned as uninhabitable, all persons vacated therefrom, and the structure secured by the City until all applicable code violations were corrected.

Thereafter, the Plaintiff appeared in the City's office of the Property Maintenance Manager requesting more time to comply with the notice of violation. However, he was denied the extension. The Plaintiff then contacted Mike Miller, the City's Director of Planning and Community Development, to inquire as to the legality of the City's condemnation of his property as a result of his residence not having electricity and running water. Mr. Miller told the Plaintiff he would further research the Plaintiff's request and contact him with a ruling.

By letter dated July 8, 2011, Mr. Miller informed the Plaintiff that he had in fact talked with the City's legal counsel regarding the Plaintiff's inquiry and relayed the following information to the Plaintiff:

> The lack of utilities is considered a life safety violation and [the City] cannot allow it to continue. You have until July 22 to restore water and electric service to the home or we will have to condemn the property until such service is restored. **If you disagree with the ruling you may seek relief in the Boyd County court system.**

[Docket No. 15-4](emphasis added).

This letter also advised Plaintiff that his time to comply with the notice of violation had been extended to July 22, 2011.

The Plaintiff never restored water and electric service to the home nor did he indicate that he disagreed with the ruling.

2

On July 25, 2011, Scott Niece sent Plaintiff a "Friendly Reminder" that he was required to restore all utility services by 4:00 P.M. that day or the house would be condemned as stated in the previous notices. [Docket No. 15-5]. This notice also provided "[i]f you have any questions or need clarification of this door hanger, you may reach me at (606) 327-2030. *Id.* There is no indication in the record that Plaintiff called Mr. Niece.

Upon inspection that same day at 4:10 P.M., which was three days past the already-extended compliance date, the City determined the Plaintiff had failed to comply with the order to restore all the utilities at the house and condemned the same.

The next day, an "Order to Repair or Demolish" for lack of utilities was sent to Plaintiff by Scott Niece. [Docket No. 15-6]. This Order reiterated that the Plaintiff's home was in violation of Sections 108.1.3, 502.1, 605.1, and 602.3 of the City's Property Maintenance Ordinance No. 106, as stated in the City's prior notices. The notice also provided, in bold, "[i]f **you have not contacted our Legal Department within 30 days of receipt of this Order, the structure listed above will be demolished.**" *Id.* (emphasis in original).

Plaintiff again failed to contact the City of Ashland Legal Department within thirty days to indicate any objection to the threatened demolition of his property. Ultimately, the house was razed after thirty days had passed without objection.

Several months after the Plaintiff's house was condemned, one of the City's Property Inspectors, Corie Kazee, found that the Plaintiff and his eight house cats were still living in the dwelling. [Docket No. 15-7]. Mr. Kazee explained to the Plaintiff that he was unable to stay in the dwelling and that he needed to leave and take his house cats with him. Mr. Kazee also

explained to the Plaintiff that it was against the City's policies and regulations to allow animals to stay in an uninhabitable dwelling. *Id.* After the Plaintiff declined to remove his house cats from the dwelling, Mr. Kazee contacted the City's Animal Control Officers, Greg Woods and Dave Branham, to remove the house cats from the condemned property. *Id.* The house cats were immediately taken to the Boyd County Animal Shelter. *Id.*

After waiting for ten days, three days in excess of the seven day period required by Ordinance No. 151, the cats were euthanized. [Docket No. 18-2]. During this period, the supervisor of the shelter, Paul Helton, contacted Plaintiff on four separate occasions and told him he could pick up his cats but would be required to pay a reclaiming fee. [Affidavit of Paul Helton, Docket No. 18-3]. Plaintiff did not appear to reclaim his cats.

Plaintiff filed this civil action against the City and the County alleging that his right to be secure in his home and property and his right to substantive due process guaranteed by the Fourth and Fifth Amendments had been violated and that he had been deprived of his longtime companionship with his eight house cats.

This Court granted summary judgment in favor of the Defendants on these claims. The United States Court of Appeals for the Sixth Circuit affirmed this ruling, holding that the City's condemnation of the Plaintiff's property was not arbitrary and capricious but was related to the City's interest in protecting the health and welfare of its citizens and, as such, Plaintiff's substantive due process rights were not violated. However, on review, the Sixth Circuit also identified a procedural due process claim implicit in the Plaintiff's allegations as "he appears to challenge the procedures taken in connection with the deprivation of his property – that is, the failure to provide him with a trial prior to that deprivation – which is the essence of a procedural

4

due process claim." [Docket No. 23].

After remand, the parties filed cross motions for moved for summary judgment with regard to the alleged procedural due process violation. Ruling in favor of the Defendant, this Court found:

> The Ordinances provide a meaningful means to assess violations and ample opportunity to be heard in that regard. The ordinance, as written, does not violate the procedural due process rights of Plaintiff.
> With regard to the Ordinances as applied to Plaintiff, it cannot be disputed that Plaintiff was given written notice of the claimed violation of the City Ordinance which justified condemnation of the premises and was given notice of a date certain by which repair must be made or that adverse action would be taken. The City provided the Plaintiff with three (3) written notices specifying his violations of the Ordinance and advising him that condemnation and/or razing of his property would take place after certain dates unless he corrected the violation or took further action.
> Despite notice of the need for action to be taken and the existence of an appeal process, the Plaintiff chose to take no action on his own behalf. At no time throughout the condemnation process, nor up to the point of filing this lawsuit, did the Plaintiff inquire into or request a hearing, formal or informal, or seek any other type of redress from the City pertaining to the condemnation of his home. At no time did the Plaintiff invoke the appeals process provided for by Section 111 of the IPMC. Only after having failed to avail himself of the process provided, Plaintiff instituted this lawsuit. It strains credibility for Plaintiff to ignore the procedures to which he was entitled and then to challenge the sufficiency of those very procedures.

[Docket No. 30].

Plaintiff, again, appealed. He argued that he was entitled to a trial by judiciary before he could be deprived of his property and that his procedural due process rights were violated by the City of Ashland in this instance. The Court of Appeals held that Section 111 of the International

Property Maintenance Code (IPMC) sets forth the means of appeal of an Order or notice issued under the Code. The Court also noted and held that the City's notices to Kennard did not specifically inform him of this appeal procedure. The Sixth Circuit ruled that this Court had in its ruling pointed out the existence of the appeal procedure set forth in Section 111 of the IPMC "but did not address the constructive adequacy of that notice" and pointed out the apparent conflict of authority in that regard between *City of W. Covina v. Perkins*, 525 U.S. 234 (1999) and *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1 (1978).

Upon the issuance of a final mandate, this Court issued its Order dated January 13, 2015, directing the parties to file Memoranda of Law addressing the constitutional adequacy of the notice of Kennard's right to appeal proved by Section 111 of the IPMC.

In response, the City of Ashland filed a revised Motion for Summary Judgment. Plaintiff sought a writ of certiorari from the United States Supreme Court, which was denied. Plaintiff has not responded to Defendant's dispositive motion or filed his own motion.

## II.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

6

Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). " 'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III.

The narrow issue before this Court, as framed by the Sixth Circuit Court of Appeals, is whether constructive notice of the existence of the IPMC's appeals process satisfies minimum due process requirements or whether the City of Ashland was required to give to Plaintiff individualized notice of the method and manner of appeal that is established by Section 111 of the IPMC in order to satisfy minimum due process requirements.

In *Memphis Light, Gas and Water Division v. Craft*, the Supreme Court held that a public utility must inform its customers of the general confines of its internal administrative dispute resolution process before terminating utility service if those procedures are not set forth in any generally published and available documents by which an individual customer could be expected to educate himself. 436 U.S. 1 (1978).

Twelve years later, in *City of W. Covina v. Perkins*, the Supreme Court held that due process does not require individualized notice of state law remedies which are established by published and generally available state statutes and case law and where there has been adequate notice of the seizure of the property. In such instances, individuals can turn to public sources to

be informed of the rights and remedies available to them. Further, the Court ruled that once a property owner has been notified of the seizure of his property, a citizen can turn to published sources to learn of his options and "the City need not take other steps to inform him of his options". 525 U.S. 234 (1999).

With regard to *Memphis Light*, in *City of West Covina*, the Court noted, "while *Memphis Light* demonstrates that notice of procedures for protecting one's property interests may be required when those procedures are arcane and not set forth in documents accessible to the public, it does not support any general rule that notice of remedies and procedures is required". *Id.* at 242.

In this case, it is not disputed that the appeal process with respect to such proposed action as established by Section 111 of the International Property Maintenance Code is generally available. The appellate procedures of the IPMC are published in book form. Copies of the Code in book form are available in most public libraries. A copy of the International Property Maintenance Code is available for viewing at the City of Ashland City Building. The provisions of the Code are accessible to all on the internet simply by "googling" "International Property Maintenance Code", where the complete procedures are set forth. Moreover, it is undisputed that the Plaintiff was given notice on various occasions of the violation of the IPMC for which his property was being condemned and that if he did not take further action, his property would be razed after stated dates.

Given the existence of widespread access to the provisions of Section 111 of the IPMC, the individualized notice contemplated by *Memphis Light* was not required. The readily available information, coupled with his actual notice of the seizure of his property provides meet

8

the requirements of due process, as explained in *City of West Covina*.

## IV. CONCLUSION

Based upon the foregoing, the City of Ashland, Kentucky and Boyd County, Kentucky are entitled to judgment as a matter of law. Accordingly, **IT IS HEREBY ORDERED** Defendant City of Ashland's Renewed Motion for Summary Judgment [Docket No. 36] be **SUSTAINED.**

This 2nd day of September, 2015.

Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge

9